ANDREW B. MOORE, plaintiff in error, *vs.* JOSEPH T. S. GLEA-
TON, defendant in error.

Where, to save the expense of an administration, the heirs at law get together
and agree to divide the estate and appoint an agent and put him in posses-
sion of the property for that purpose, a bill may be filed against him by any
one or more of the distributees, the same as against an administrator.

The husband, being heir to his wife, may convey her interest in her father's es-
tate, and equity will decree its payment to the assignee.

In an affidavit for a *ne exeat*, it is necessary that the creditor should swear posi-
tively to the defendant's intention to remove, and the amount of his claim;
but not as to his threats or preparation to leave.

In Equity, from Terrell county.　Decision on demurrer by
Judge KIDDOO, at chambers, 8th April, 1857.

This bill was filed by Joseph T. S. Gleaton, against An-
drew B. Moore.　The bill states that in the year 1853, Mary
A. Williams departed this life intestate, leaving an estate worth
about eight thousand dollars and six children as her distribu-
tees and heirs at law.　That by an arrangement and agree-
ment among all the parties interested, no administra-
tion was taken out upon said estate, but it was agreed in
writing, that Andrew B. Moore, the husband of one of the
daughters, should take charge and control of the same, sell
all the property, collect and pay off the debts and divide the
estate according to law among the heirs at law.　That in
pursuance of said agreement, Moore sold the estate, which
amounted to about $7,000, and on the day of sale, being the
3d December, 1854, made a partial division among the par-
ties, at which time, complainant received from him one thou-
sand and ten dollars as a part of his share of said estate.

The bill further charges, that since that time, Moore has
received from some other source the sum of nine hundred
dollars, which he has never paid out or accounted for. That
all the debts of the intestate have been paid, and all the de-
mands due and owing her have been collected by said Moore.

The bill further alleges, that shortly after the death of said

Moore vs. Gleaton.

Mary A. Williams, Lavinda Palmer, one of the children and wife of Thomas G. Palmer, died, and her husband had received no part of her share or interest in said estate at the time of her death. That afterwards, in the presence of said Moore and at his solicitation, complainant purchased for the sum of one thousand dollars, all Palmer's share and interest in said estate, in right of his wife, and took from him an assignment of the same. And Moore, in order to induce complainant to make this purchase, agreed and promised, that he should have a part and interest in a note on Hines Holt, given for the land sold, belonging to the estate, equal to the amount of Palmer's interest, and that he would pay over to him, out of said note, when collected, the amount due him.

The bill further charges, that Moore has collected this note, and that he has paid to complainant only seven hundred and three dollars, and that he has received from said Moore, in all, on account of his own and Palmer's shares, in said estate, the sum of $1713, and that he refuses to pay him the balance in his hands coming to him, in right of his wife, and as the purchaser and assignee of Palmer's share of the estate of said Mary A. Williams deceased. The bill prays for an account, and that complainant be allowed and paid two-sixths of said estate, *minus* the amount already received by him.

Appended to the bill was an affidavit by complainant, that the balance due to him from Andrew B. Moore on an accounting, according to the best of his belief, will be at least six hundred dollars, and that defendant threatens, and is preparing to move. as defendant is advised and believes, and intends to go beyond the limits of this State, and, that deponent is in danger of losing his claim, unless a writ of *ne exeat* be issued, restraining defendant from going beyond the jurisdiction of the Court.

The bill was sanctioned, and subpœnea and *ne exeat* ordered to issue, each in the penalty of one thousand dollars.

At the March Term of the Superior Court, defendant moved, to dismiss the bill and to discharge the *ne exeat*, on the grounds:

1st. That there are no proper parties to said bill.

2d. That there is no equity in the bill.

3d. That there is adequate remedy at law.

4th. That the writ of *ne exeat* was improvidently and illegally granted.

After argument, the Court overruled the demurrer, on all the grounds taken.

To which decision counsel for defendant excepts.

McCoy & Hawkins, for plaintiff in error.

F. H. West, for defendant in error.

*By the Court*—Lumpkin J. delivering the opinion.

Is there equity in this bill?

The heirs of the complainant's father-in-law, six in number, get together and agree to distribute the estate without incurring the expense of an administration. Gleaton is entitled to one share in right of his wife, and he purchased the share of Palmer, who married another distributee. A part of these shares is paid him; and he files this bill to receive the residue.

It is objected that the rest of the heirs should be made parties. Why so? any more than in a suit against an administrator? It is said that Palmer's wife being dead, her husband had no right to convey her interest. The reply to this is two-fold. He is the heir of his wife, and as such is entitled to her portion. True, at law he could only recover it through an administration. Here the parties are in equity. But in the second place, when this agreement to divide was entered into, it amounted to a reduction to possession of each one's share. Again it is argued that Gleaton has a common

law remedy. It will not be pretended however, that it is so complete, even if it could be made available at all.

In the next place, it is insisted that the *ne exeat* should be dismissed, because the affidavit is insufficient. All that is necessary is, that the affidavit should be positive as to the defendant's intention to go abroad. *3. Daniel's Ch. Pr.* 1039. And this affidavit is so. It is true, that as to his preparation and threats, the complainant swears, as to his information and belief. But as to his intention to leave, he swears positively, according to our interpretation of his oath. And that he is in danger of losing the whole or some part of his debt, unless this writ is granted. And after all, why should an affidavit to obtain bail in equity, be more stringent than at common law ?

Lastly it is argued that no bond was given, as required by the Act of March 1856, to respond to the defendant, by reason of the issuing of this *ne exeat.* No such ground was taken in the Court below. *Non constat*, but that the bond was duly taken and filed in the Clerk's office.

Judgment affirmed.