## Nunn, administrator, *et al. vs.* Burger *et al.*

1. A deed was made to a trustee for a married woman for life, and at her death the property was to be equally divided between the children of her husband. The life-tenant having died, the children brought an action of ejectment against the occupants of the land. Defendants in ejectment filed their bill against the children and their father, alleging that the latter left in the hands of another certain notes in 1862, upon the eve of his departure for the war, and instructed such other person to look after his family and provide a home for them during his absence; that the person so entrusted collected the money and purchased the land in controversy, and had the deed made to him as trustee for the uses above stated; that this was done without the knowledge or consent of the plaintiff's father, and he had no knowledge of it until 1866, when he had sold one hundred acres of the land to one of the complainants; that he then discovered the mistake in the deed, and he and his wife consented that the person named as trustee might make such complainant a title, and afterwards that he might make title to the other complainants, which was done; that the father received the money for the land, and out of it had supported, maintained and educated the children; and that complainants had placed valuable improvements on the land. The prayer was for a decree declaring complainants' title good and setting aside the

v 75-45

trust deed, or in default of this, that complainants be subrogated to the rights of the father and be repaid the money expended for the education and maintenance of the children, and that a reasonable sum be allowed for the improvements :

*Held,* that the bill was demurrable, and that complainants were not entitled to any relief either at law or in equity. From the lapse of nearly twenty years after the discovery of how the deed was made, it will be concluded either that it was originally made on proper authority or that the act of the trustee was ratified by the father.

2. It being the duty of the father to support, educate and maintain his children, he has no right against them to which the complainants could be subrogated.

(*a.*) This case differs from those in 46 *Ga.,* 557, and 70 *Ga.,* 179.

3. Complainants having bought with their eyes open, they knew, or could have known, of the title of the children by the use of very little diligence ; and no fraud or imposition having been practiced upon them, they can only set off improvements against mesne profits.

April 6, 1886.

*Laches.* Title. Equity. Parent and Child. Subrogation. Betterments. Mesne Profits. Before Judge HUTCHINS. Jackson Superior Court. August Term. 1885.

Reported in the decision.

W. I. PIKE ; W. C. HOWARD ; ALEX. S. ERWIN, for plaintiff in error.

W. S. MORRIS ; BARROW & THOMAS, for defendant.

BLANDFORD, Justice.

The defendants in error brought their action of ejectment to recover certain lots and parcels of land against the plaintiffs in error, except D. N. Burger. Their title rested upon a deed of conveyance made by one Miller to W. Y. Elder, as trustee for the wife of D. N. Burger, who was to have the use of the land for life, and at her death the same was to be equally divided between the children of D. N. Burger. Mrs. Burger, the life-tenant, having died, the children

of D. N. Burger brought these actions. The defendants. in the ejectment suits brought the bill in this case with D. N. Burger, wherein it is alleged that D. N. Burger left. in the hands of Elder certain notes in 1862, and upon the. eve of his departure for the war, he instructed Elder to look after his family and provide them a home during his. absence. Elder collected the money and purchased the land in controversy from Miller, and had the deed made to himself as trustee for the uses above stated; that this. was done by Elder without the knowledge and consent of Burger, the husband and father, and he had no knowledge of the same until 1866, when he had sold one hundred acres of the land to Donehue, one of the complainants; he then discovered the mistake in the deed, and himself and wife consented that Elder might make Donehue a title, and afterwards they further agreed that Elder might make. the other plaintiffs in error a title, which was done. The bill further alleges that Burger, the father, received the money for the land, and out of the same he had supported, maintained and educated his children, the plaintiffs in the ejectment suits; and further, that the defendants had placed valuable improvements on the land.

The bill prayed that the land be decreed to belong to the purchasers from Burger and that the deed from Miller to Elder, trustee, convey no title to the wife and children; and if this could not be done, then that the complainants be subrogated to all the rights of Burger, and that defendants be decreed to pay plaintiff the money which Burger had expended for the education and maintenance of his children, and that they be allowed a reasonable sum for their improvements. To this bill the defendants demurred for want of equity, and because plaintiffs had an adequate remedy at law. The court sustained the demurrer, and the plaintiffs excepted, and this is the complaint here.

1. If the plaintiffs in error are entitled to any relief, either at law or in equity, we are unable to see it. The deed made by Miller to Elder, as trustee for the wife of

Burger, during her life, and at her death, to his, Burger's, children, it is alleged, was wrongfully procured to be made by Elder. Yet this was discovered by Burger and his vendees in 1866. There were no steps taken by Burger or his vendees to remedy this wrong until the present bill was filed. They have acquiesced for nearly twenty years. After this lapse of time, the law will conclude either that Elder had originally authority to take the deed, as he did, or that Burger ratified his act in so doing.

2. If Burger had any right to call upon his children to repay him the money which he expended for their support, education and maintenance, then the plaintiffs in error would be subrogated to all his rights, but as the law made it his duty to educate and support his children, he has no rights as against them to which the plaintiffs could be subrogated. He had no money of theirs in his hands belonging to the children, and in this particular, this case differs from *Chapman vs. Southwestern R. R. Co.*, 46 *Ga.*, 557.

There the mother, who was the natural guardian of the daughter, had received dividends from stock which belonged to the daughter, and from this fund had supported and educated the daughter, and also the case of *Maddox et al. vs. Oxford*, 70 *Ga.*, 179. In the last mentioned case, the husband used the money of the wife, which was her separate estate, and purchased land in his own name. Upon a suit brought by the wife to recover the money, against the husband and his vendor, it was held that whatever sum the husband had paid to the wife, his vendor would be subrogated to the husband's right to recover the same from the wife. It does not require much discrimination to distinguish the case under consideration from the cases referred to.

3. Under the allegations in the bill, we see no equitable ground upon which the plaintiffs can claim to be paid for the improvements which they have put on the land. They bought this land with their eyes open; they knew, or could

have known, of the title of the defendants in error by the use of very little diligence. There was no fraud or imposition practiced upon them by any one. Under such circumstances, the plaintiffs can only set off improvements against mesne profits.

Let the decree of the court below be affirmed.