## Houston *et al. vs.* Bryan.

78  181
h112 363
78  181.
117  692

1. The widow of a slave, after emancipation, invested certain funds in property, having a deed made to certain trustees in trust for the sole and separate use of herself for life, and after her death to such child or children as she might leave living, share and share alike. She had no children of her own, and at the time of the making of the deed, she had reached a period of life at which there was no possibility of issue. Her deceased husband had a child by a former marriage, whom she had always treated as her own child from the date of her marriage and had adopted and raised. There was some evidence to show that the money with which the purchase was made was derived from her husband, with directions to invest it for the use of the child and herself during life, with remainder to the child:

   *Held,* that there was sufficient evidence to show that the child of the deceased husband was the party to take in remainder. This was rather a latent ambiguity, explainable by parol, than a mistake, requiring clear, unequivocal and decisive evidence to correct it.

2. The fact that the widow made the purchase and declared the trust after her manumission, and when she was vested with full power and authority to enter into such a transaction, is sufficient to sustain the validity of the deed to the land purchased by her and conveyed to the trustee; nor would the fact that she may have derived the money from her husband prior to her manumission have any bearing upon the question other than as it tended to show the probability of the trust's having been made in favor of the husband's child.

3. A purchase made by an executor, administrator or other trustee at his own sale, is voidable at the option of any party interested in the property, whether the sale be made directly to him or through the interposition of another person.

   (a) Where an administrator took possession of and sold land, as to which no administration was necessary, his intestate having been a life usee thereof, and there being a remainder over, and where the purchaser at the sale, within a few days thereafter, conveyed the property to the administrator as an individual, and no money passed between them, and the administrator took with notice of the claim of the remainderman, he was not entitled to set off against a suit to recover the land the value of improvements placed thereon by him, except as a set-off against mesne profits.

4. The verdict was sustained by the weight of the evidence, and the refusal of a new trial was not error.

January 18. 1887.

Wills.   Estates.   Remainders.   Construction.   Slaves. Administrators and Executors.   *Bona Fides.*   Betterments.   Mesne Profits.   Before Judge ADAMS.   Chatham Superior Court.   June Term, 1886.

Reported in the decision.

JACKSON & WHATLEY; DUBIGNON & FRASER, for plaintiffs in error.

J. R. SAUSSY; I. BECKETT, for defendant.

HALL, Justice.

Diana Bryan exhibited her bill on the equity side of the court against U. L. Houston, both in his individual capacity and as administrator of Diana Jordan, deceased, and others, for the purpose of recovering a portion of· a city lot situated in Savannah, which she alleged had been purchased at his own sale by the said Houston, administrator as aforesaid, not directly, but through the agency of another.   She alleged that she was the child of one Alexander Cannon by a former wife; that Cannon was the husband of Diana, who, after his death, married Archie Jordan ; that at the time of Cannon's death, he was a slave ; that the then wife of the said Cannon was also a slave; that Cannon left with his said wife, Diana, at his death, eight hundred or a thousand dollars in specie, ·which he directed her to invest in a lot and building for the joint use of herself and his said wife during the life of the wife, and after her death to his said child, the complainant ; that he had no children by his wife, the said Diana ; that this money was kept until the slaves were manumitted; that after their manumission, the widow of Cannon intermarried with Archie Jordan, and that on the 2nd of May, 1876, this money was invested by her in the property covered by the trust deed in question ; that the trusts set forth and declared in said deed were wrongfully, ignorantly and

by mistake set forth and described as follows, to-wit : " In trust for the sole and separate use of Diana Jordan for her natural life, and after her death, to such child or children as she may leave living at the time of her death, share and share alike, with power to said Diana Jordan to authorize her trustee, the said Archie Jordan, to sell the whole or any part of the trust estate and to reinvest the proceeds in such other property as she may deem best for the interest of said estate." It appears that Diana Jordan had no children of her own and had adopted and raised the complainant as her own child ; that at the making of this deed, she had reached that period of life when there was no possibility of issue. The relation of parent and child had always, from her marriage with Cannon, existed between complainant and Diana Jordan. Archie Jordan died in 1882. No successor in the trust had been appointed, and at the death of Diana Jordan, which occurred in May, 1884, it was still vacant. Houston qualified as her administrator in June, 1884. Previous to her death, he had purchased from her trustee and herself a portion of the lot in dispute, and it appears that he had Diana Bryan, the complainant, to sign the deed conveying the land thus purchased. This signature was made by her mark, and whether she signed it as a witness simply, or as one of the feoffors, is somewhat doubtful. On the trial, there was much conflicting evidence upon the issue made by the bill and answer. The jury, however, found the premises in favor of the complainant and the court decreed in accordance with their finding. Thereupon a motion was made for a new trial on various grounds, which was refused, and the defendant brought the case here for review. It will not be necessary to consider all the questions made by this record in order to dispose of the case.

1. Is there evidence sufficient to show that Diana Bryan was the party intended to take in remainder under this trust deed after the death of Diana Jordan, the *cestui que vie?* We think the circumstances make quite a clear

case leading to this conclusion. It is certain that the trust property was purchased with funds furnished by Diana Jordan, but whether any portion of these funds was derived from the amount claimed to have been left by her former husband, Alexander Cannon, is, though not so clear, yet quite immaterial, though the probability, from the testimony, is that some portions, of that fund contributed to the purchase. In the next place, Diana Jordan claimed and treated no other person than the complainant as her child. Complainant always lived with her, and was always recognized by her as her child. There was no other person in being at the time or subsequent to the execution of the trust deed to fill the description of her child, as used in that instrument, or to whom reference was probably made. That the testimony to establish a mistake in the execution of a solemn instrument of this character must be clear and satisfactory, admits of no dispute. The power to correct mistakes in a deed should be exercised with caution, and to justify it, the evidence should be clear, unequivocal and decisive as to the mistake. Code, §3117, and citations. But this is rather a latent ambiguity than a mistake as to the person designated as beneficiary in this deed, and who, under the circumstances, was intended by the designation, "child or children of Diana Jordan," to take in remainder. She had never regarded any other person than complainant as sustaining to her that relation. It is admissible to apply, by parol testimony, the description given in an instrument so as to ascertain the particular person or persons intended to be embraced in that description. Indeed, parol evidence is admissible to explain all such ambiguities. Code, §§3801, 2757, 2457. And we are not prepared to hold that the evidence required to apply such an ambiguous description should be of the same high character and tendency as that which would authorize the correction of a mistake.

2. The disability of Alexander Cannon to acquire and transmit property on account of his slavery is not necessa-

rily involved in this case. The fact that his widow, Diana Jordan, made this purchase and declared this trust after her manumission, and when she was vested with full power and authority to enter into such a transaction, is sufficient to sustain the validity of the deed to the land purchased by her and conveyed to her trustee. She had the right to acquire, hold and dispose of property. The source from which she derived the money could have no bearing upon the issue, other than as it tended to show the probability of the trust being made in favor of complainant. For that purpose, it was admissible as evidence, and the jury had a right to consider it with other proof in the case as conducting to the conclusion which they reached.

3. It is familiar learning that a purchase made by an executor, administrator or other trustee at his own sale is voidable at the option of any party interested in the property, whether the sale be made directly to him or through the interposition of another person. There seems to have been great haste in administering this estate and winding up its affairs. The property was sold to a person who conveyed it, in a few days after, to the administrator. No money appears to have passed between them. The title was made by the administrator to the purchaser at the sale, when the property was immediately reconveyed to the person acting as administrator. It is evident that this administrator was apprised of the claim that complainant had on this property before he ever administered upon the estate, at least before he took possession of it and made any improvements upon it. It would not be going too far to infer that he administered upon this estate with a view of procuring the remainder of the lot, a part of which he had previously purchased. There has, in fact, been no administration of this estate. Diana Jordan had nothing in this property to administer. Her interest in it terminated at her death. She had nothing but a life estate, and of that the defendant, Houston, seems to have been well apprised. The only portion of her estate, some

household furniture and other personal effects of like character, that ought to have been administered, he suffered to be divided without administration among the heirs of her late husband, Diana Bryan and certain of the collateral relations of Diana Jordan.

The claim set up by Houston for improvements made by him, any further than they served as a set-off against mesne profits, was wholly untenable. He was charged with notice, as we have seen, of complainant's rights in the land purchased at his own sale ; besides, he knew that Diana Jordan had no interest in it, on which he could administer. In no sense of the term was he a *bona fide* purchaser for value without notice, entitled to avail himself of the liberal rule in favor of such a purchaser as to the allowance of improvements. Code, §3464, and citations. *Ruffin, ex'x, vs. Paris,* 75 *Ga.* 653 ; *Nunn, adm'r, et al. vs. Burger et al.* 76 *Ga.* 705. The notice brought home to Houston affected his conscience and made his purchase covinous ( *Urquhart vs. Leverett,* 69 *Ga.* 92), independently of the legal fraud implied from the confidential relation in which he stood to the trust property and the complainant who claims it.

4. Though not absolutely required, we think this verdict sustained by the weight of the evidence, and that Judge Adams properly exercised his discretion in refusing to grant the new trial.

Judgment affirmed.